The majority has determined herein that plaintiff-administratrix has failed to prove that James Austin's contraction of the HIV virus and other sexually transmitted diseases was proximately caused by the negligence of Caswell Center or Caswell Annex. Caswell Center is the only named defendant herein. Defendant alleged for the first time at the hearing that Caswell Annex is a part of Cherry Hospital, who was not named as a party defendant.
James Austin was a severely mentally retarded adult with a mental age of five years old, who lacked the capacity to make decisions for himself and to communicate other than through grunts and gestures. Due to his mental retardation and behavior problems, James Austin's family was unable to provide for his care and safety at home. Therefore, James Austin was placed in the care and custody of Caswell Center in 1967 when he was approximately ten years old. Since January, 1967, Caswell Center has had legal custody and control over James Austin.
It is undisputed that James Austin (hereinafter referred to as decedent) died as a result of AIDS which he more likely than not contracted while institutionalized at Caswell Center in Kinston or while at Caswell Annex located on the grounds of Cherry Hospital in Goldsboro. Both Caswell Center and Cherry Hospital are State institutions.
The evidence establishes that defendant had legal custody of the decedent and that defendant placed decedent at Caswell Annex during several periods, including from July 1, 1982 to October 27, 1986. Defendant contends that Caswell Annex is a part of Cherry Hospital, not Caswell Center, and that Caswell Center had no responsibility for the care, custody and control of decedent while at Caswell Annex. However, defendant's answer to plaintiff's interrogatory number 11(a) states that decedent was served by
(emphasis added) Caswell Center from January 17, 1967 through February 14, 1977, March 1, 1977 through March 28, 1978 and from July 1, 1982 until his death on July 28, 1993.
A reasonable interpretation of this response is that Caswell Center admits responsibility for decedent's care during these periods. The majority has found that decedent more likely contracted the HIV virus in approximately 1981 when he was a resident of Caswell Annex and that it is less likely that decedent contracted the HIV virus after 1986 when he was returned to defendant's facility in Kinston. If decedent was served by the Caswell Center from July 1, 1982 until his death, as admitted by defendant, based upon the same medical "uncertainty" utilized by the majority, it is likely that decedent contracted the HIV virus between 1976 and 1989 and the more likely period would be between 1981 and 1984. However, defendant, as stated above, contended for the first time at the hearing in this case that decedent was under the care, custody and control of Cherry Hospital from 1982 through 1986.
Jimmy Woodall, Director of Caswell Center, and Rebecca Brown, the Director of Records Services for Caswell Center, both testified that Caswell Center was given administrative authority over the Caswell Annex at some unspecified time prior to 1986. As part of its administrative authority over Caswell Annex, Caswell Center had responsibility for the conduct of employees at Caswell Annex. Decedent moved back to Caswell Center on October 27, 1986 and remained there until his death. The greater weight of the evidence indicates that decedent was under the actual care, custody and control of Caswell Center continuously from July 1, 1982 through July 28, 1993, a period of more than eleven (11) years prior to his death.
Decedent's medical records which were provided by Caswell Center during discovery and defendant's responses to discovery also indicate that decedent was under the care and control of Caswell Center from 1982 until his death. For example, defendant's response to interrogatory No. 12 which asks defendant to state the nature of plaintiff's medical care during "his institutionalization at Caswell Center" directs plaintiff to "Attachment A" which was a summary provided by defendant listing dates of medical treatment beginning August 28, 1982. Twenty pages of medical summaries of decedent's care were provided and there is no reference to Cherry Hospital as the provider of any of decedent's medical care from August 28, 1982 through the date of death.
Decedent's parents placed him in the care and custody of Caswell Center. They were aware that Caswell Center transferred him for various reasons to Cherry Hospital and to Caswell Annex, but they understood that Caswell Center remained responsible for his care and custody. Plaintiff had no notice that the defendant would raise for the first time at hearing that "Caswell Annex" was a part of Cherry Hospital, not Caswell Center.
Defendant should not be allowed to provide incomplete and misleading answers during discovery to the prejudice of plaintiff and then benefit from the same information withheld. There is nothing in defendant's answers to plaintiff's interrogatories that would reasonably place plaintiff on notice that decedent was allegedly under the care of Cherry Hospital while residing at the Caswell Annex. The use of the words "served by" for interrogatory No. 11(a) does not appear to be coincidental. If Cherry Hospital may be a responsible party in this case, it should be added as a necessary party.
Assuming decedent was under the care and custody of Caswell Center from July 1, 1982 through the date of his death July 28, 1993; plaintiff must still prove that Caswell Center, or one or more of its employees, officers or agents were negligent in failing to exercise the standard of care necessary under the circumstances to provide for the reasonable care and safety of decedent and that such negligence was the proximate cause of decedent's contraction of the HIV virus (and other sexually transmitted diseases) that caused his death.
Decedent did not have the mental capacity to consent to sexual activity and the evidence supports a finding that he was the passive receptor of repeated sexual assaults by another or others. Caswell Center was aware of decedent's sexual assaults, but asserts that it had no duty to take reasonable measures to protect decedent from sexual assaults from other residents and that it could not reasonably be expected to protect decedent from such assaults.
Caswell Center's Annual Habilitation Plans indicated that it had a duty to provide the decedent with "24-hour supervision to keep him safe in his environment". Caswell Center further guaranteed decedent the right to be free from harm, mistreatment, abuse, neglect and exploitation. But, employees of Caswell Center failed to act reasonably to protect decedent from sexual assault, even when they knew or had reason to know that decedent was a "passive receptor" of sexual assaults from other persons. The negligent breach of their duty of care to decedent was the proximate cause of decedent's contracting the Herpes Simplex virus and the HIV virus which caused his death.
It is statistically possible that decedent contracted the HIV virus from a male homosexual employee of Caswell Center who had AIDS and who had direct "hands on" contact with the decedent. This employee was investigated by Caswell Center for engaging in sexual activity with residents, but the charges were not substantiated through the internal investigation process. This employee who also died from AIDS approximately two years after decedent, had been infected with the HIV virus (AIDS) for approximately eleven years, which meant that he had the HIV virus when hired by Caswell in 1987 and during the six-year period that he had direct contact with decedent. Dr. Jeffrey P. Engel is of the opinion that decedent had the Herpes Simplex virus and the HIV virus and that both were likely sexually transmitted. Dr. Engel also opined that ninety to ninety-five percent of people develop active AIDS within two to fifteen years from the date of infection.
The majority has found that there is insufficient proof that Caswell Center or Caswell Annex breached its duty to decedent and that without such proof, whether Cherry Hospital was the legally responsible entity and thus a proper defendant is a moot issue. I disagree with this reasoning of the majority because there is no way to determine whether employees or agents of Caswell Annex breached their duty to decedent if the conduct of employees or agents of Caswell Annex cannot be evaluated by the Commission since Cherry Hospital is not a named party defendant. No evidence of the negligence of Cherry Hospital could have been presented if Cherry Hospital was not a defendant.
It is unfortunate that this case has been decided by the majority based on the insufficiency of the evidence presented due in part to plaintiff's failure to name Cherry Hospital as a party-defendant when it is clear from the record that the defendant's misleading and possibly incomplete discovery responses prevented plaintiff from discovering that Cherry Hospital may also have been a responsible party. Defendant is estopped by their conduct from now raising any defense in bar of adding Cherry Hospital as a party-defendant. Therefore, Cherry Hospital should be named as a party defendant and the record should be re-opened for receipt of additional evidence.
If Cherry Hospital is not added as a party-defendant, the greater weight of the evidence still supports a holding that decedent was in the custody and control of Caswell Center while at Caswell Annex and that defendant's negligence was the proximate cause of decedent's death from AIDS.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER